Eid v. Thompson, number 12-4271, Mr. Mosley, and Ms. Dalbler? Dalbler, okay. Welcome back. Thank you, Your Honor. It's a pleasure to be back. May it please the Court, I'm Thomas Mosley, counsel for the appellants in this case. I'd like to reserve three minutes for rebuttal. That's fine. I want to address three issues, de minimis, timely retraction, and what I would call the specific intent requirement of 204C1, the basis for what is at issue in this case. Turning first to de minimis, we deal with a time-honored, venerable rule of statutory construction against which I submit and the Supreme Court has held all statutes, obviously including the Immigration Act, are enacted. And if ever there was... The problem I have here is that when I look at the text of the statute, 1154C or 2004C, which it's the same thing, no petition shall be approved if, one, the alien, I'm going to skip over, has sought to be accorded, and it goes on, a preference status as the spouse of a citizen by reason of a marriage for the purpose of evading the immigration laws. And when I look at that, and I realize this is in the civil context we have here, this is not removal, Mr. Ede got his I-130 when he went through the first, when he said that he was married to Ms. Pickett. And then he was going for his what, his I-145? He was going for his adjustment interview. The I-130 merely allows you to make the application for adjustment. So he goes that, and it's discovered that, hey, this looks like a sham. And he says right away, yeah. They talk, and they say, yeah, it is. And my guess is they were advised to withdraw it or told that this could cause a problem, and so they withdrew it. But he, when you look at the statute, he sought to be accorded a preference status as the spouse of a citizen for the purpose of evading the immigration laws. I think, Judge Ambel, we have fundamentally two points here with respect to that. Okay. With respect to de minimis, and for the reasons that we've gone into and I'll go into in a minute, the violation here is so trivial. I mean, that's what, that's what, if indeed it is a violation, the violation is so trivial given the fact that there was, they did this naively in the belief that formal marriage, merely getting married, was, was sufficient. They had no, and the record is clear, no intent to violate the law. But doesn't the violation go to the very heart of the visa ban section? No. You're making the de minimis argument, and it seems to me that this is the heart of the section. Fraudulent or sham marriage for purposes of avoiding immigration laws, it's a bar. Well, Judge Fischer, first of all, with respect to that, what we have here on, on the de minimis part of the argument is we have no intention to violate the law.  That's another part of the argument. But to make the point that this is a de minimis violation under the, under that concept, I think is probably not your strongest point. All right. In the spirit of piling on, let's, let's, let's look at, at what I'm concerned about. Maybe my colleagues are, but I agree with them. I'm not with you on the de minimis. But what about the conflation here between the intent requirement of the statute and the sham marriage? I mean, and what fascinates me about this case is there's some subtlety, some subtle differences between what the IJ said and what the BIA said. Would you address? Well, I, I think what's, what's important here, and, and we have to, address the, the, the BIA decision as, as the, as I would say, the final agency action. And, and I think the subtlety here, Judge Hardiman, that I see is that the statute doesn't say for purposes of obtaining an immigration benefit. The statute, using language very, very similar to what I would consider a specific intent crime. The statute says for the purpose of evading. And in this case, the Board of Immigration Appeals accepted, accepted that they did not act with, with intention, with an intent to violate the law. I think it's a matter, a very fundamental matter, very similar. All right, before we get there, though, as I read the IJ's opinion, the IJ said, look, on these facts, I find that, that they, that there was a purpose of evading the immigration law when they entered into a sham marriage for the purpose of obtaining this benefit to which they weren't entitled absent the, the marriage. But on appeal, and it's not, by the way, an immigration judge decision. I'm, I'm sorry, I meant to say USCIS. Yeah, District Adjudication's Office decision. On, on appeal, what happened there to the Board of Immigration Appeals, on the Board of Immigration Appeals, the Board of Immigration Appeals said, look, we accept the fact that you didn't have an intention to violate the law, and the government doesn't dispute that, but nevertheless, we're going to say that that's a purpose, that, that you, we've established a purpose to evade, and I submit. So if, if USCIS had written the BIA's opinion, then you're in trouble. I might be, I might be in, in, in more difficulty. Which raises a really difficult, perhaps novel, Chenery issue, doesn't it? At your brief at page 21, you say that neither the USCIS nor the BIA invoked this provision under, under Chenery, it cannot be used. That seems to suggest that as long as USCIS cited the right standard, that there's not a Chenery problem. And my question to you is, is, we all know enough about Chenery that, that we don't affirm on other grounds when the agency doesn't articulate the reason. We do that all the time, or periodically with district courts. But my question is, how does the Chenery Doctrine interact when you've got two levels of agency review here, like USCIS and BIA, as opposed to, for example, when we're reviewing just the Social Security Appeal or something like that? Well, I think here we deal with the other fundamental provision of the APA, that you only review final agency action. And the only final agency action in this case is the Board of Immigration Appeals decision. And that decision specifically accepts the fact that there was no intention of violating the law. In other words, we don't have the specific intent that's required under this, under this, under this, under this statute. I mean, Congress knew how to enact statutes where it said, as for example, making a false statement for the purpose of, of obtaining an immigration benefit. But the, the, the draconian penalty that's imposed by this statute, I submit, is far more, is, is, is, is limited by rather different language. The language that says there has to be a purpose to evade the immigration law. I think the record is clear that these naïve, foolish folks... But USCIS so found. It's, it's so found. But, but the... So should we, should we vacate and remand for the idle exercise? Should we just tell the BIA, look, you know, you did not make a finding of intent under the statute. Your ruling is invalid. And, oh, by the way, USCIS did make... No, no, no, because I, I, I think, I think, I think the, I think the, the, the USCIS finding for which, you know, I obviously have some procedural due process issues, but the, the, the, the US, the USCIS finding, Judge Hardiman, as I read it, merely equated, merely equated marrying for the purpose of obtaining an immigration benefit with a purpose to evade and is, is... Which on these facts seems to work. It doesn't, it doesn't work on other facts. For example, people may enter into a sham marriage in order to get health care, or in order to get schooling, or, you know, nutrition or housing benefits. There are myriad reasons why an undocumented alien might enter into a sham marriage, but here the factual record was pretty clear that this sham marriage was precisely for the purpose of allowing him to continue to work for this company, remain in the country when he had no right to remain in the country. That's not the case. What's ironic here, Judge Hardiman, is he had an H-1B visa. This wasn't, he had an H-1B visa. This was allowed, this, so it didn't give him the benefit of staying here. It didn't give him employment authorization. He already had that. Well, they wanted to make it permanent. Right, but... He was a valued employee and they wanted to make his... I mean, that was renewable. That was renewable. That visa, was it not? Yes, I mean, that's, you see, this wasn't treated even as an evasion, if you will, by initially, but when they went to the interview and they voluntarily withdrew everything, the agency said, you know, fine, just renew your H-1B and keep going. So the agency didn't treat this to the bottom, not upon doing something for the purpose of an immigration benefit. It's for the purpose of evasion and evasion, purpose and evasion is, I submit, similar to this court's position in en banc on Pierre. Perhaps I can use an en banc decision in my favor at some point, but in any doesn't dispute this, acted naively without a specific intent to violate the law. Finally, I want to make one other point, because it is, in a sense, a Chenery point on timely retraction. When Judge Martini issued his decision here, when Judge Martini issued his decision here, he thought he was engaging in de novo review. So he addressed the issue of timely retraction, even though the board itself had not addressed that, had not addressed the issue of timely retraction, the argument that we make with respect to costus. So I would urge, and even Judge Martini even cited a section of 204C in which neither the board nor the USCIS relied. So I would suggest that at a very minimum, this case, because under Chenery, there wasn't so-called de novo review, he had, and the agency didn't address that point. At the very least, the case should be remanded to the agency to address the issue of timely retraction. If Mr. Eade doesn't win on this issue, I guess the removal proceedings then kick back and other options does he have to try to avoid removal? Is he eligible for waiver of removal, for example? Well, a very brilliant jurist once suggested that a new period of time for cancellation of removal might restart. But unfortunately, in his case, the filing of the notice to appear has cut that time off in the law and the circuit and the Board of Immigration would not restart him under the Your Honor's concurrence, and Okecki has been rejected in that regard. The only argument left to him at that point is the exceptionally difficult one, that commencing removal proceedings against him was a fifth amendment violation because it was done on the basis of national origin, his being from the Middle East, though ironically a Lebanese Christian. So this really is, for him, for his wife and child, the only serious form of relief. Thank you very much. Ms. Dobler. May it please the Court, Kirsten Dobler on behalf of the government. First, I'd like to address the contention that the government doesn't dispute that the Eades, excuse me, Mr. Eade and his former wife acted naively. That's actually... I think what they mentioned is on page 17 of your brief, you said that you look, you agree they may have acted naively without the intent to commit a crime. Precisely. And so the point here is that I think one of the key points for Mr. Mosley is he's trying to say that there has to be an intent element in 1154C because of the use of the word purpose. If I do something with a purpose, that means I do it with the intent or the intention of whatever the result I'm seeking. And if the implication of what you said on page 17 was that they really didn't have the intent, I realize you said intent to commit a crime. Precisely, Your Honor. I just wanted to make sure that was clear. Obviously, we argued before this Court that they were not as naive as... But come back to his point. Absolutely. Obviously, the Eades argument is that intent is required given the purpose to evade immigration laws language in section 1154C. But courts have established that the evasion element there and that the purpose to evade element is satisfied where the alien intended to enter into a marriage for immigration benefits only as opposed to intending to enter into a marriage to establish a life together as husband and wife. But should the government be required to prove intent to evade? Your Honor, it's the alien's burden at all times in a visa application to establish his... Excuse me. It's the petitioner's burden to establish the beneficiary's eligibility by preponderance of the evidence. And that's why this Court, among others, has held that... You put something in, whether it's prima facie, meets the prima facie requirement or not, we can decide. But he's saying that he did not enter into the first marriage, admittedly a sham marriage, for the purpose of evading immigration laws. Right. Under court's reasoning, he did. And that's because Mr. Eyde entered into his first marriage with the intent, with the purpose, of obtaining immigration benefits. That was the only reason he married his former wife, who was also his employer at the time. So they married because they came to the conclusion, if we're married, I can stay here as a legal permanent resident. Correct, Your Honor. In doing that, did they have to conclude, geez, we're violating the immigration laws? They don't admit that they needed to, and our argument is that the purpose to enter into a marriage with the sole intent of gaining immigration benefits, that is, gaining a green card, is sufficient. But that's not what the statute refers to. It doesn't use the word benefits. The statute itself does not. However, courts, including this court, albeit in unpublished decisions, has explained that 1154C, Bars in Marriage, where the previous marriage was entered into, quote-unquote, for immigration purposes only. We're not bound by those decisions. No, Your Honor, you're not. But this isn't the only court to have held that. The BIA has also explained that the question of whether somebody has entered into a marriage for the purpose of whether the marriage was for the sole purpose of obtaining immigration benefits. All right. And let's talk about the findings, though. USCIS, cite for us where USCIS made that finding. I beg the Court's indulgence. No problem. No problem. I can't be concerned about the time it's taking you because I couldn't find it quickly. That's why I put the onus on you. But I think it's important to see where the finding is. So I think it's in there. I believe it is, too. I believe it's on page A139 of the record, which is page it would be page three of the decision, the second paragraph. Read it for us. Contrary to Attorney Mosley's contention, the record does establish an attempt by the beneficiary to evade the immigration laws. The following is a quote from the beneficiary's sworn statement provided to this service on February 20, 2001. I was looking at my options to stay in the United States and asked Carolyn to marry me and file immigration paperwork. In her own sworn statement, Ms. Pickett also confirms what the beneficiary said. Elias wanted to remain and work in the All right. So there we have a specific finding by USCIS. Yes, Your Honor. And what about the BIA? The BIA on the last page of this decision found that the petitioner argues on appeal that any violation of the law is de minimis and that the beneficiary and Carolyn Eyde never intended to violate the law. We disagree. The petitioner's and beneficiary's admissions, both in their 2001 statements, which is what I just read, and their 2009 declarations, make it clear that they never intended the marriage to be a bona fide partnership. All right. So they just made a conclusion that it was a sham marriage. Yes, Your Honor. But they didn't tie that up with an intent or purpose to evade immigration laws in the way that USCIS tied those together. Well, they did go on to explain that in any event, their admissions that their marriage was entered into for the sole purpose of procuring the beneficiary's lawful status in the United States are sufficient bases under matter of topic to find the beneficiary subject to the 204C bar. All right. So then your argument would seem to be that sort of through the back door, the BIA made a holding that there was an intent to a purpose to evade the laws when it adverted to the prior standard that was common in BIA decisions that if you seek to obtain a immigration benefit, that equates to purpose to evade immigration laws. Exactly. Is that your argument? Exactly. Yes. You know, the Sixth Circuit and the Eighth Circuit have also held that that's the appropriate standard, of course, in addition to the BIA. And that standard makes sense for a couple of reasons. Number one, given the purpose that Section 1154, and in particular Subsection C, is intended to serve. In 1986, when Congress amended the INA to tighten the procedures regarding marriage fraud, it did so because it recognized that marriage fraud was a real problem. It was a big problem. It was allowing... Let me just go back to Judge Fischer's point. And I guess to some extent, Judge Hartman picked up on it. At the time of the marriage to picket, Mr. Ederide... I've been saying I don't know. It's actually Ederide.  Mr. Ederide, he had a valid visa. He did, Your Honor. So he was not in danger of removal at that time. Correct. So was he really attempting at that point to evade immigration laws? By his own omission. He was trying to get another penny, so to speak, a benefit. But I don't know. I mean, it's... The more you dig, he didn't come here illegally. And he wasn't in imminent danger of being, you know, having his time run out to be in this country. That's true, Your Honor. But if this Court creates that kind of exception and says, now, you know, if you're not in imminent danger of being removed, that applying for immigration benefits through a marriage that's admittedly a sham does not trigger the rule... But the point that Judge Fischer was making is he's trying to get an additional benefit. But is he trying to evade immigration laws for the purpose of not being removed? Under the case law, Your Honor, yes, he is. And that interpretation makes sense because if this Court said that he was not intending to evade the immigration laws, it creates a rather large loophole that undoes much of 1154C. In that case, any alien could marry a U.S. citizen, whether they're in removal proceedings or not, apply for either a visa or a green card through that citizen. And if they're caught either then or down the road, they could come back and say, I didn't know that what I was doing was unlawful. I thought that my friend was doing me a favor and helping me out. I thought everything was on the up and up. And that really creates a rather large loophole for 1154. Will, go ahead, Mike. No, go ahead. Let me take it back. Do you now acknowledge that the statute in question requires specific intent to evade? No, Your Honor. We believe that... Okay. Well, we believe that the intent to evade is the intent to enter into a marriage for immigration purposes. You do not agree that specific intent is needed? To... To violate the immigration laws? No, Your Honor. We believe that the intent at issue is solely the intent to enter into a marriage for immigration purposes. And the BIA, in their decision, they relied on the matter of... They cited to the matter of TOFIC. They did. 1990 decision, which likewise didn't specifically... They found there was no need to find a specific intent. Right. Okay. Now, if we find that the statute does require specific intent, does the record support that violation? The record does support it in the sense that neither Mr. Eade nor his former wife was It supports it in that the agency reasonably concluded that. Mr. Eade's former wife... Not the BIA, USCIS. The BIA was not clear on that issue. So why don't you have a Chenery problem there? Yeah. Do we have a Chenery? That would be my next question. Your Honor, there's no Chenery problem because, I mean, what this court would essentially need to do is remand for the BIA to enter a sentence that says that we, like the CIS, which we have affirmed, don't believe that Mr. Eade and his former wife were as naive as they claim. And as CIS explained, that is supported by the record because Mr. Eade's former wife owned and managed the insurance agency that he worked for and had successfully figured out how to apply for the H-1B visa on Mr. Eade's behalf and to then renew it when it became... When it was about to lapse. But we can also conclude to the contrary, that the record does not support specific intent. Your Honor, I don't believe that this court, that the record would support a finding that the agency's determination of that the Eades did, in fact, enter into a marriage knowing that it was a violation of the immigration laws or knowing that it was intended to confer immigration benefits is not supported by the record. Now, this court's review, despite the district court's decision, is it's deferential under the Administrative Procedures Act. I know that the district court got that wrong, but this court can't disturb the agency's finding unless it's arbitrary and capricious. And it's simply not in this case. Or a misinterpretation of the law. True, Your Honor. But there's no law that supports the Eades' contention that Section 1154C requires something more. They've failed to point to any law whatsoever that does so. In fact, all the courts have looked at this issue, including this circuit and unpublished decisions. The Sixth Circuit, the Eighth Circuit, and the BIA have all decided that the intent is what the government is saying it is, that it's just the intent to enter into a marriage for immigration purposes. For immigration purposes? Only. So you concede... In other words, to evade? The language in the statute is evade. Correct. For the purpose of evading. With the intent to evade immigration laws. Our argument is that what that means, as courts have interpreted it, is that intent to evade means with the intent to obtain immigration benefits. And the reason that that's what that means is because... So evading the law isn't just avoiding criminal prosecution. It can mean affirmatively accessing legal benefits to which one is not entitled. Correct. And the reason that that's a reasonable interpretation is because Congress acknowledged in 1986 that spousal visa petitions allow aliens to jump in line. They don't have to wait for visas that they may otherwise have to wait years and years for, and they may qualify for a visa that they may otherwise not be eligible for. So in addressing that concern, Congress amended Section C, Subsection C, to make it a much stringent requirement, to make it cast a far wider net. So you concede then, would you not, that if the sham marriage is to obtain health care benefits or housing benefits or food, etc., then that's not violative of the statute? I believe that that would not violate Section 1154C. I don't have case law on that. I'm not positive. Now, my only hesitation in saying that is that, of course, another consideration that the BIA looks at is whether the intent was to enter into a bona fide marriage, that is to establish a life together as husband and wife. If you enter into the marriage for the purpose of getting, for example, health benefits, which have nothing to do with immigration, then clearly you're not in 1154C. And 1154C, right. The target of 1154C is immigration fraud as it relates to married couples, right. It's not health care fraud and the like. Congress is very specific as to that. It even explained that 1154C. Can I ask a practical question? Absolutely. Can you shed any light on why the agency would spend the resources of USCIS to pursue a case like this one when the man entered the country legally and has a family here when there are so many thousands or millions of undocumented aliens who didn't enter the country legally and don't have families here? Absolutely. And I was mindful that this court may be concerned with that issue. It certainly occurred to me. But I think the issue here is that CIS is bound by the will of Congress here. And Congress has not given CIS any discretion with respect to how it can approve or deny under Section 1154C. In fact, Congress mandates that USCIS deny visa petitions for aliens like Mr. Ede. USCIS simply has no discretion to say, you know, given weighing all the equities in this case, this is not a case that we want to litigate. It has no choice. The only discretion that may come into play is with respect to Mr. Ede's removal proceedings, which, of course, aren't issued before this court. He's not yet subject to a removal order. If somebody made the decision, we're not going to pursue this. I mean, it'll never be known. Respectfully, Your Honor, CIS is affirmatively obligated to follow Congress's will. And it can't... Well, Congress's will is that you have... The primary will of Congress is that if people are undocumented aliens, they're here illegally, they shouldn't be here unless there is some exception written to the law that allows them to be here. Here's a person who came here legally and admitted right away that he entered into a Are you sure that that's... Congress is saying that in this circumstance, you must, absolutely must attempt to, in this gray area, try to have this person put into a position where ultimately, when further proceedings happen, he will be removed? Particularly in light of BIA case law on the issue, yes, Your Honor, CIS is bound. Now, Congress, of course, as it always does, remains free to create a statutory exception to Section 1154C if it wants the agency to take into account certain factors such as U.S. citizen children, the fact that the alien beneficiary... But as Mr. Mosley said, in this case, it looks like this is the best shot. I mean, he's not... Because of timing concerns, he's not eligible for cancellation or removal. I'm not entirely sure whether he's eligible for cancellation or removal. Clearly, that's not the issue before this court. But Mr. Eades, in particular, his challenge appears to be that his ultimate removal is really what is the ultimate harm here. That's what he stresses is his important liberty interest and what is causing the utmost harm to his family. And that's simply not the issue before this court. CIS is bound under BIA law and under the statute to deny Ms. Packard Eades' spousal petition because Mr. Eades attempted to gain immigration status through a marriage he admits was a sham, he admits was entered into so that he could apply for and receive a green card. All right. Thank you very much. Thank you. All right. Just very briefly, if Congress wanted to sweep as broadly as the government urged, they had a statutory model, 212, 8 U.S.C. 1182, A6C1, a false statement for the purpose of obtaining immigration benefit, for the purpose of obtaining an immigration benefit. But they didn't do that. All right. But the agency has, from your perspective, watered down the statutory standards somewhat. And don't we owe that agency decision or case law deference under Chevron? Well, I don't recall that the government didn't cite Chevron, but I don't think we do in this case because of the plain language. We have the plain language of the statute and the fundamental analysis. You deal with the plain meaning of words. And the word here is for the purpose, for the purpose of evasion. It's not for the purpose of obtaining an immigration benefit. Purpose of evasion under certainly following from Pierre and the Supreme Court's decision in the criminal side on Bailey, it's a specific intent crime. It's not just that they entered into this marriage for purpose of getting a green card. They had to do that with the knowledge and intent that they were violating the law. And certainly, the BIA finding, the BIA decision has no finding that they acted intentionally. Indeed, the BIA says, assumes that they- Is 1154C a crime? What? Is 1154C a crime? No, it's not a crime. You're not going to be in prison for that. It's criminalized in eight U.S. It's similarly criminalized in identical language in eight U.S.C. 1325, which would make it a crime. And indeed, I would even perhaps, the U.S.C.I.S. decision never specifically finds that they knew that they were violating the law. I mean, they say it, the U.S.C.I.S. decision says evade has been established. But what it lacks is a specific finding that they knew that they were violating the law. And for this kind of draconian penalty to apply, I submit that it has to be shown that they acted intentionally with the knowledge that they were violating the law because it's a specific intent crime. That's contrary to the other circuits, though. Well, the other circuits have never dealt with this specific, have never dealt, as I see, with those decisions with respect to this, with respect to the specific issue. And certainly did not address, Bailey did not address, it didn't have the benefit of this court's en banc decision in Pierre. So in this situation, I would urge that you find that a specific intent to violate the law has not been established and reverse the decision of the district court or alternatively remand to the board to consider the, excuse me, the issue of timely retraction. Thank you very much. Thank you. We'll take the matter under advisement.